UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SUSAN TRONOLONE, on behalf of
herself and of all others similarly
situated,

               Plaintiff,

       v.

LVNV FUNDING LLC and FORSTER
& GARBUS LLP,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.: _____

**CLASS ACTION COMPLAINT
AND JURY DEMAND**

## <u>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>

       Plaintiff Susan Tronolone, on behalf of herself and of all others similarly situated, alleges, on knowledge as to herself and on information and belief as to all other matters, as follows:

### Introduction

       1.     This is a putative class action for actual and statutory damages stemming from Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), which prohibits debt collectors from engaging in unfair, deceptive, or abusive practices in collecting consumer debts; and of General Business Law § 349, which prohibits business practices that are deceptive to consumers. Specifically, Defendants have engaged in the wholesale filing of numerous lawsuits to collect debt from consumers despite the fact that they possess no evidence of the existence or their ownership of the bulk of the alleged debts, and have neither the ability nor the intention to ever obtain such evidence, instead hoping to deceive consumers into paying by the mere fact of suing them and then representing to consumers who

appear that they actually possess sufficient information to obtain a judgment on the merits at

trial.  In Ms. Tronolone's case the Defendants only revealed after three years of litigation that

they neither possessed nor did they ever intend to obtain any evidence that they owned the

disputed account or that it had an open balance.

### Jurisdiction and Venue

2.      This Court has subject matter jurisdiction under 15 U.S.C. § 1692k(d) and

28 U.S.C. § 1331.

3.      Venue is proper in this district under 28 U.S.C. § 1391(b) because the

Defendant transacts business here and the conduct complained of occurred here.

### Parties

4.      Plaintiff Susan Tronolone is a natural person domiciled in the City of

Buffalo, County of Erie, and State of New York, and is a "consumer" as that term is defined by

15 U.S.C. § 1692a(3).

5.      Defendant LVNV Funding LLC ("LVNV") is a foreign limited liability

company organized and existing under the laws of the State of Delaware, registered to do

business in the State of New York.  LVNV is in the business of purchasing and attempting to

collect defaulted debts alleged to be due another through litigation and non-litigation means, and

regularly attempts to collect debts alleged to be due to another, and so is and has at all times

pertinent hereto been a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

6.      Defendant Forster & Garbus LLP ("Forster") is a domestic registered

limited liability partnership organized and existing under the laws of the State of New York with

its headquarters at 60 Motor Parkway, Commack, New York 11725.  Forster regularly attempts

to collect debts alleged to be due to another, and is and has at all times pertinent hereto been a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

7.    The acts of LVNV alleged hereinafter were performed by its respective employees acting within the scope of their actual or apparent authority.

8.    All references to "LVNV" herein shall mean LVNV or an employee thereof.

9.    The acts of Forster alleged hereinafter were performed by its respective employees acting within the scope of their actual or apparent authority.

10.    All references to "Forster" herein shall mean Forster or an employee thereof.

## Statutory Background

11.    The FDCPA regulates the conduct of debt collectors that attempt to collect consumer debts on behalf of another.

12.    Congress in enacting the FDCPA found abundant evidence that many debt collectors collect debts through abusive, unfair, and deceptive practices, and that such practices contribute to social ills including personal bankruptcies, marital instability, unemployment, and invasions of individual privacy.  Congress accordingly enacted the FDCPA to eliminate such abusive practices by debt collectors, ensure competitive parity of debt collectors that behave fairly, and encourage state action to protect consumers against debt collection abuses.  15 U.S.C. § 1692(a)-(e).

13.    The FDCPA is a strict liability statute and provides for actual and statutory damages upon the showing of a violation.  Whether collector conduct violates the FDCPA is

determined from the standpoint of the "least sophisticated consumer." *Clomon* v. *Jackson*, 988 F.2d 1314 (2d Cir. 1993).

14.     The FDCPA applies to attorneys engaged in consumer debt-collection litigation. *Heintz* v. *Jenkins*, 514 U.S. 291 (1995).

15.     The FDCPA at 15 U.S.C. § 1692e prohibits false, deceptive, and misleading practices generally in the collection of debts, and sets forth a nonexhaustive list of actions that are per se false or deceptive.  Among these per se violations are the failure to conduct meaningful attorney review prior to an attorney's executing debt collection documents and the use of any false representation or deceptive means to collect or attempt to collect a debt. 15 U.S.C. § 1692e(3), (10).

16.     New York General Business Law § 349 broadly prohibits deceptive and misleading business practices that are consumer oriented.  Business practices are consumer oriented if they have an impact on the general consuming public.  They are deceptive or misleading if a reasonable consumer would likely be misled.

17.     The routine filing of deceptive or misleading court papers to collect consumer debts has been held to be deceptive and misleading consumer oriented conduct in violation of Section 349.  *Midland Funding* v. *Giraldo*, 39 Misc. 3d. 936 (Nassau County Dist. Ct. 2013); *Sykes* v. *Mel Harris & Assocs., LLC*, 757 F. Supp. 3d 413, 428 (S.D.N.Y. 2013).

### Factual Allegations

18.     In the mid-1990s Ms. Tronolone opened a SEARS credit-card account. She used the account to make a handful of purchases and repaid those loans in installments.

19.     At some point in or around 2003 Citibank (South Dakota), N.A. purchased SEARS's credit card business and became the issuer of the account.

20.     Despite the fact that she was no longer using the account to make purchases or otherwise obtain loans, SEARS and/or Citibank imposed fees on the account, which Ms. Tronolone disputed.

21.     As she had not used the account to make purchases or otherwise obtain loans in a decade, Ms. Tronolone repeatedly demanded that the account be closed, and ultimately ceased making payments under the account.

22.     To the best of her knowledge, Citibank closed the account in 2008, reporting it to credit bureaus as paid in full.

23.     On August 31, 2010, Defendant LVNV, through counsel Defendant Forster, filed a summons and complaint against Ms. Tronolone in the Buffalo City Court, case no CV-012136-10/BU.  Defendants served the summons and complaint on Ms. Tronolone on September 6, 2010.

24.     In the complaint caption, Defendants alleged that Defendant LVNV was suing as an assignee of "Citibank."

25.     In the complaint body, Defendants alleged that Defendant LVNV was seeking to enforce a defaulted credit card account with an "agreed balance" of $3,078.07.

26.     In the complaint body, Defendants alleged that Defendant LVNV "purchased this account for value."

27.     The complaint was signed by an attorney from Defendant Forster, who certified pursuant to 22 N.Y.C.R.R. Part 130-1.1-a that the attorney had performed a reasonable inquiry and based on that inquiry believed the allegations of the complaint not to be frivolous.

28.     Ms. Tronolone answered the complaint on September 14, 2010, asserting that she had repaid the principal loans and denied and disputed the allegations of the complaint.

- 5 -

29.     On September 2, 2011, Defendants filed a Notice of Trial in which they asserted that they did not require any discovery in the matter and were ready for trial.

30.     Pursuant to the Notice of Trial, the Buffalo City Court scheduled an "arbitration hearing" at which an assigned arbitrator was to "hear and decide" "[a]ll triable matters."

31.     In the belief that Defendants possessed evidence and were actually prepared to proceed against her, Ms. Tronolone made a single payment to Defendants in 2012.

32.     For the arbitration hearing, Defendants sent a retained appearance attorney who did not possess any evidence of the underlying debt or its ownership by Defendant LVNV, but was instructed to attempt to negotiate a settlement.

33.     Although there was no meeting of the minds concerning settlement, the case was marked as settled on the City Court's calendar and taken off the Court's active calendar.

34.     Two years later, Defendants moved the City Court, without opposition from Ms. Tronolone, to restore the action to the active trial calendar, asserting that the case had been overlooked and only discovered as the result of an audit of Defendant Forster's files.

35.     The City Court thereafter again scheduled an "arbitration hearing" at which an assigned arbitrator was to "hear and decide" "[a]ll triable matters."

36.     For the arbitration hearing, Defendants again sent a retained appearance attorney who did not possess any evidence of the underlying debt or its ownership by Defendant LVNV, but was instructed to attempt to negotiate a settlement.  The hearing was thereafter adjourned.

37.     In response to a subsequent motion for summary judgment filed by Ms. Tronolone, Defendant Forster filed an Affirmation on behalf of Defendant LVNV, dated September 30, 2013.

38.     In the Affirmation, Defendants stated that they possessed no evidence in support of any of their claims in the action, and would only be able to obtain such evidence through "meaningful discovery."

39.     Thus, Defendants' statement in the Notice of Trial that they did not require discovery and were ready to prove their case at trial was false, misleading, and deceptive.

40.     At a subsequent adjourned arbitration hearing, Defendants again sent a retained appearance attorney who stated that he did not possess any evidence of the underlying debt or its ownership by Defendant LVNV, and that he was instructed by Defendants to attempt to negotiate a settlement and, if Ms. Tronolone was unwilling to settle, to voluntarily dismiss Defendant LVNV's case.

41.     At that hearing, held on October 4, 2013, Defendants thus indicated to the arbitrator that the case was being voluntarily dismissed, and the Court's file was notated accordingly.

**Allegations Common to the Class**

42.     According to the Unified Court System's WebCivil Local online database, in 2012, Defendant LVNV filed at least 9,616 debt-collection lawsuits in the lower courts of the State of New York.  Defendant filed an unknown additional number of actions in Supreme Court.

43.     According to the Unified Court System's WebCivil Local online database, in 2011, Defendant LVNV filed 10,355 debt-collection lawsuits in the lower courts of the State of New York.   Defendant filed an unknown additional number of actions in Supreme Court.

44.     According to the Unified Court System's WebCivil Local online database, in 2010, Defendant LVNV filed 18,831 debt-collection lawsuits in the lower courts of the State of New York.  Defendant filed an unknown additional number of actions in Supreme Court.  Of those lower-court cases alone, Defendant Forster represented Defendant LVNV in at least 11,644 of its 2010 lawsuits.

45.     As has been repeatedly noted by courts, commentators, and the media, debt buyers like Defendant LVNV typically are not able to produce evidence supporting their claims when required to do so by defendants or courts.  *See, e.g.*, DC37 MELS, *Where's the Proof?  When Debt Buyers are Asked to Substantiate Their Claims in Collection Lawsuits against NYC Employees and Retirees, They Don't* (Dec. 2009).

46.     On information and belief, when Defendant LVNV purchases portfolios of debts, it typically does not receive underlying evidence sufficient to establish the particulars of the claims it sues people for.

47.     On information and belief, Defendant LVNV's purchases of debts from lenders are typically governed by a "Purchase and Sale" agreement or "Forward Flow" agreement with the lender setting forth the terms of the debt purchase transactions between the debt seller and Defendant LVNV.

48.     On information and belief, the "Purchase and Sale" or "Forward Flow" agreements governing Defendant LVNV's debt portfolio purchases typically include disclaimers to the effect that underlying evidence cannot or will not be provided for all accounts, but rather,

impose severe limitations on Defendant LVNV's ability to request or obtain such underlying evidence, such as limiting such requests to a small percentage of the purchased portfolio or to a short time frame following the purchase.

49.     On information and belief, because of these limitations, Defendant LVNV knows that it will not be possible to obtain underlying evidence documenting the vast majority of lawsuits that it files, and so has no intention of obtaining and producing such underlying evidence in the vast majority of cases.

50.     On information and belief, Defendant LVNV nevertheless sues tens of thousands of people nationwide annually, including more than ten thousand people annually in the State of New York, in the hope of obtaining default judgments or, as to defendants who appear, to extort settlement payments by falsely purporting to be ready, willing, and able to prove their case at trial.

51.     On information and belief, Defendants routinely file Notices of Trial or Notes of Issue in cases where consumers do not default, rather than filing motions for summary judgment.  Defendants do this because they routinely possesses no evidence and have no ability to obtain evidence supporting their claims, and so are unable to prepare motions for summary judgment.

52.     Thus, a review of a sampling of the 11,644 actions commenced by Defendants in 2010 reveals that in every case in which defendants did not default or settle with no need for judicial involvement, Defendants filed a Notice of Trial and obtained a pretrial conference or trial date.  The same review reveals that Defendants routinely discontinued actions in which a defendant appeared at the conference or trial date and was not willing to settle.

53.     Similarly a review of 22 court files for cases filed by Defendants in Buffalo City Court during the years 2008 through 2010 in which Notices of Trial were filed reveals that of the 18 cases in which arbitration hearings or pretrial conferences were actually scheduled, Defendants did not produce underlying evidence at a single such proceeding.  In those cases in which the consumer did not default, agree to settle, or admit to owing a debt to Defendants, the latter voluntarily discontinued the actions.

54.     Accordingly, on information and belief, Defendants routinely falsely assert in filed Notices of Trial that they are ready to prove their case at trial.  In actuality, Defendants fully intend to appear at arbitration or trial with no evidence, attempt to convince unrepresented defendants to settle, and withdraw the lawsuit in the event that a consumer appears and contests the claim, and have no intention of presenting evidence at arbitration or trial.

55.     On information and belief Defendants' goal in filing lawsuits and Notices of Trial is to obtain default judgments and, as to defendants that appear, to force the defendant to come to court at a pretrial conference or arbitration hearing or trial date and engage in settlement negotiations in person with an attorney, in the hope that the unrepresented consumer can be convinced to settle or concede liability despite Defendants' lack of evidence.

56.     On information and belief, Defendant LVNV's "Purchase and Sale" agreement with Citibank, like those between it and other lenders, severely limits its ability to obtain underlying evidence from Citibank, and contains disclaimers from Citibank to the effect that underlying evidence may be unavailable and, if provided, may contain an unknown proportion of erroneous information and so should not be relied on anyway.

57.     Thus, on information and belief, Defendant LVNV is fully aware that it lacks the ability to obtain any evidence, much less admissible evidence, to prove its claims in the

vast majority of the tens of thousands of lawsuits that it files.  Hence Defendants' general

practice of dismissing any case in which a consumer refuses to pay them without requiring them

to obtain or present evidence.

### Limitations and Tolling

58.     Ms. Tronolone's cause of action under General Business Law § 349

accrued at the time she received Defendants' Notice of Trial on or around September 7, 2011,

and so is within the three-year statute of limitations applicable to that claim.

59.     Ms. Tronolone's cause of action under 15 U.S.C. § 1692e also accrued as

of the time that the Notice of Trial was received on or around September 7, 2011.  However, Ms.

Tronolone is entitled to equitable tolling of the statute of limitations for that cause of action

during the period between that date and the service of Defendants' September 30, 2013

Affirmation in which Defendants revealed that the statements in the Notice of Trial were false,

misleading, and deceptive.  Equitable tolling is appropriate because (a) Defendants' assertion that

they possessed all the evidence they needed without discovery and were prepared to present that

evidence at trial tended to conceal the fact that Defendants in actuality had neither evidence nor

the ability or intention of obtaining evidence; (b) Ms. Tronolone was certainly not aware that

Defendants lacked any evidence at all either that Citibank sold them an account or that Citibank

claimed it had a balance, until the 2013 Affirmation; and (c) this lack of awareness was due to

the concealment of the Defendants, not to any lack of diligence on Ms. Tronolone's part.

60.     Indeed, Defendants continued to make additional concealing

misrepresentations.  On January 13, 2012, Defendants appeared at an "arbitration hearing" in the

City Court at which the arbitrator was to decide all merits issues in the action.  Defendants

falsely purported to be prepared to go forward at that hearing, and attempted to talk Ms.

Tronolone into agreeing to make payments to settle the action, despite their total inability to proceed by presenting evidence in support of their claims.  On or around June 4, 2013, Defendants filed a Motion to restore the City Court action to the City Court's active trial calendar, thus again deceptively indicating that Defendants were prepared to proceed at trial. Indeed, Defendants' concealment of their lack of ability or intention to obtain evidence continued right until September 2013 when Defendants indicated in the same Affirmation that they intended to take discovery to obtain evidence in support of their claims, when in reality Defendants intended to dismiss their case in the event Ms. Tronolone did not agree to settle, had no intention ever of obtaining evidence against her, and dismissed their case the very next day following the hearing on the motion to which the Affirmation was addressed.

61.     Under these circumstances, equitable tolling of Ms. Tronolone's FDCPA claim is appropriate.  *See generally Sykes* v. *Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010) (applying equitable tolling in FDCPA action).

### Class Action Allegations

62.     Named plaintiff Ms. Tronolone brings this action, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and as representative of a class consisting of all New York State residents who have been sued by Defendant Forster on behalf of Defendant LVNV for a Consumer Credit Transaction in a New York State Justice Court and been served a Notice of Trial in such action.

63.     Excluded from the class are Defendants and their respective officers, members, partners, managers, directors, and employees, and the latters' immediate family members, and legal counsel for all parties to this action and members of their immediate families.

64.     As set forth below, the proposed class meets the prerequisites to class certification set forth in Fed. R. Civ. P. 23(a) and 23(b)(2).

65.     **Numerosity.**  The class is so numerous that joinder of all members is impracticable.  A sampling of the results obtained from the WebCivil Local database suggest that well over 40 consumers are within the class.

66.     **Commonality.**  Questions of law and fact common to the class predominate over any questions affecting only individual class members.  In particular, the question whether Defendants routinely, as a matter of general policy and/or practice, serve notices of trial despite not possessing any evidence that would enable them to actually proceed at trial, and with no intention of ever obtaining such evidence, and whether this practice violates 15 U.S.C. § 1692e(10), is a question that is common to all class members.

67.     **Typicality.**  The claims of the individually named plaintiff are typical of the claims of the plaintiff class, in that the plaintiff like other class members was served with a notice of trial that deceptively indicated Defendants' readiness for trial despite the Defendants lack of ability or intention to actually proceed at a trial by presenting evidence.

68.     **Adequacy.**  The named plaintiff will fairly and adequately protect the interests of the class, in that she has no interests antagonistic to those of the absent class members, is committed to vigorously litigating this matter, and has retained counsel experienced in class action and consumer and civil rights litigation.

69.     **Ascertainability.**  The class members are identifiable and may be ascertained by objective criteria, by identifying defendants in actions filed by Defendants in New York State Justice Courts on whom the latter have served notices of trial.

70.     *Superiority.*   A class action is superior to other available methods for the fair and efficient adjudication of the controversy because individual joinder of all members would be impracticable.  Class action treatment will enable a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.  Furthermore, it is believed that many if not most members of the proposed class have incomes below the poverty level, and have limited access to or ability to obtain legal counsel in order to bring their own actions.  In addition, Defendants have acted and are acting on grounds generally applicable to the class, thereby making appropriate relief with respect to the class as a whole.

71.     *Predominance.*   Ever class member's claim arises out of Defendants' uniform practice of proceeding without evidence against appearing consumers through the service and filing of notices of trial or notes of issue that are deceptive in that they indicate a readiness and ability to proceed with proof that the Defendants know they do not and will not possess.  The factual issue of the existence of this uniform practice and the legal questions whether it violates the FDCPA and General Business Law § 349 predominate over individual issues of causation, damages, and limitations that may follow resolution of the common liability issues.

72.     *Manageability.*   There are no factors that should render difficult the management of this action as a class action.

## COUNT ONE
### (Deceptive Conduct in Violation of Fair Debt Collection Practices Act by both Defendants)

73.     Ms. Tronolone repeats and realleges paragraphs 1 through 72 of her Complaint as though fully set forth in this paragraph.

- 14 -

74.     The conduct of Defendants as described in the Complaint violated 15

U.S.C. §§ 1692e, 1692e(10), and 1692f in that Defendants served and filed notices of trial which

asserted readiness to prove their cases against consumers at trial without the need to take

discovery, despite being in possession of no admissible evidence and having no intention of ever

obtaining any evidence.  Indeed, contrary to their assertion of readiness to proceed at trial,

Defendants' plan in every case in which a Notice of Trial was filed and served was to withdraw

their lawsuit in the event the consumer failed to voluntarily pay to settle the lawsuit or concede

liability without requiring the Defendants to take discovery or present evidence to the state court.

75.     Plaintiff class members have suffered actual damages as a result of

Defendants' illegal conduct in the form of costs and attorneys' fees incurred and payments made

in reliance on Defendants' deceptive representations.  Plaintiff class members are also entitled to

statutory damages under 15 U.S.C. § 1692k(a)(2)(b).

**COUNT TWO**
**(Deceptive Acts and Practices in Violation of General Business Law § 349 by both**
**Defendants)**

76.     Ms. Tronolone repeats and realleges paragraphs 1 through 75 of her

Complaint as though fully set forth in this paragraph.

77.     Defendants' service of notices of trial broadly on appearing consumer

defendants in consumer debt-collection lawsuits was consumer-oriented conduct.

78.     Those notices of trial were broadly deceptive in that they asserted

readiness and ability to proceed with proof before the Court despite Defendants' general practice

never to obtain evidence against any consumer and to withdraw their lawsuit, without obtaining

evidence, against any consumer who appeared and declined voluntarily to pay.  These documents

were thus likely to mislead reasonable consumers acting reasonably in the circumstances.

79.     Plaintiff class members have suffered actual harm as a result of Defendants' deceptive conduct in that they have been compelled to attend court proceedings and thus suffer inconvenience and loss of time; have in many cases incurred costs of transportation, lost earnings, attorneys' fees or court costs; and have in many cases been deceived into paying Defendants.

80.     The conduct of Defendants as set forth in the Complaint entitles Plaintiffs to actual damages, treble damages, statutory damages, and reasonable attorneys' fees, under General Business Law § 349.

**Demand for Jury Trial**

81.     Ms. Tronolone demands a trial by jury in this action.

**Prayer for Relief**

WHEREFORE, Plaintiff Susan Tronolone respectfully demands that the Court enter judgment against Defendants LVNV and Forster jointly and severally for:

A.     An order certifying this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3).

B.     Under the first cause of action, an award of actual damages to the class pursuant to 15 U.S.C. § 1692k(a)(1), including all attorneys' fees and other out-of-pocket expenses incurred, wages foregone, and settlement payments made by class members after receiving notices of trial served by Defendants; an award of statutory damages to Ms. Tronolone in the amount of $1,000 under 15 U.S.C. § 1692k(a)(2)(B)(i) and to the class in the amount of the lesser of $500,000 or 1% of the Defendants' net worth, pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii); and an award of costs, disbursements, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3);

C.    Under the second cause of action, an injunction commanding Defendants to cease their unlawful conduct, pursuant to General Business Law § 349(h); an award of the greater of threefold actual damages or $50 for each class member, pursuant to General Business Law § 349(h); and an award of costs, disbursements, and reasonable attorneys' fees pursuant to General Business Law § 349(h);

D.    Interest on the aforementioned judgments; and

E.    Such other and further relief as this Court may deem just and proper.

Dated: Buffalo, New York
        September 4, 2014

_____ s/ Matthew A. Parham _____
Matthew A. Parham
       *mparham@wnylc.com*
Western New York Law Center
237 Main Street, Suite 1130
Buffalo, New York  14203
(716) 855-0203 x112

*Attorneys for Plaintiff Susan Tronolone*